IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

---

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| vs. | ) | Cv. No. 10-2109-STA-dkv |
| | ) | Cr. No. 07-20393-STA |
| JERONE WALLER, | ) | |
| Defendant. | ) | |

---

ORDER DIRECTING CLERK TO ENTER ORDER IN CIVIL AND CRIMINAL CASES
ORDER DENYING UNITED STATES' MOTION TO DISMISS
ORDER GRANTING MOTION UNDER 28 U.S.C. § 2255
ORDER DIRECTING THAT THE CRIMINAL JUDGMENT BE RE-ENTERED
AND
ORDER APPOINTING ATTORNEY ROBERT BROOKS AS COUNSEL IN CRIMINAL CASE

---

Defendant Jerone Waller, Bureau of Prisons inmate registration number 22088-076, an inmate at the Federal Correctional Institution ("FCI") in Yazoo City, Mississippi, filed a *pro se* motion pursuant to 28 U.S.C. § 2255, in which he alleged that he had been deprived of a direct appeal through the ineffective assistance of counsel.[1] (ECF No. 1.) On March 22, 2010, the Court ordered the United States to respond to the motion. (ECF No. 3.) The United States filed an answer on May 13, 2010 (ECF No. 11) and on May 14, 2010, filed a motion to dismiss. (ECF No. 13.)

---

[1] The Court addresses only the issue that Waller was deprived of a direct appeal and renders no opinion on the merit of the remaining issues. Because the criminal judgment in case no. 07-20393-STA will be re-entered, Waller may raise the other issues on direct appeal.

On December 19, 2007, a federal grand jury returned a four-count indictment against Defendant Jerone Waller charging him with three counts of possession of a firearm after the conviction of a felony (Counts 1-3), in violation of 18 U.S.C. § 922(g) and one count of possession of marijuana with the intent to distribute (Count 4), in violation of 21 U.S.C. § 841(a)(1). (United States v. Waller, No. 07-20393-STA, Criminal ("Cr.") ECF No. 1.) On November 5, 2008, Defendant entered a plea of guilty to Counts 1 and 4 of the indictment, pursuant to a written plea agreement that provided that Defendant retained the right to appeal: (1) any determination by the Court that he was an Armed Career Criminal, (2) the Court's determination on the number of criminal history points, or (3) the Court's determination of the applicable offense levels pertaining to the two counts of conviction. (Cr. ECF No. 34.) On February 26, 2010, the Court imposed a sentence of one hundred fifteen (115) months imprisonment, along with a three year period of supervised release. (Cr. ECF No. 29.) Counts 2 and 3 were dismissed on motion of the United States. (Id.)

Defendant Waller was represented by C. Michael Robbins. Defendant alleged that after sentencing, he asked Robbins to file a notice of appeal. (ECF No. 1-1 at 59.) The United States responded, contending that Defendant's contention is not credible and is contradicted by the record. (ECF No. 14 at 9.) Attorney Robbins provided an affidavit stating that he discussed the option of appealing with Waller, advising him that an "appeal would be ill advised." (ECF No. 14-1 at 9.) Robbins further stated that

2

"[Waller] appeared to understand my counsel and agreed to consider whether he desired to appeal and notify me [of his decision] by phone sometime within the next week which was the first week of March 2009." (Id. at 10.) Because Robbins advised Defendant that there was a risk of increased punishment in the event of an appeal and resentencing, the United States contended that it is not believable that Waller would have desired an appeal. (ECF No. 14 at 9.)

Defendant Waller's motion to vacate was signed under penalty of perjury. (ECF No. 1 at 13.) Waller stated that, "on the day he was sentenced, February 26, 2009, he requested his court-appointed counsel to file a notice of appeal of his sentence." (ECF No. 1-1 at 59.) Waller alleged that he receive no communication from Robbins and tried to call him when he reached FCI Yazoo, but no one answered the phone. (Id.)

Although the government submitted a detailed affidavit from Defendant's trial counsel that generally set forth the reasons no appeal was filed and which specifically countered Defendant's claim that he requested that an appeal be filed, Defendant's allegations were not disproved by the records of the case. Although this Court accepted the plea and conducted the sentencing hearing and may rely on its own recollection, any discussions about Defendant Waller's desire to appeal occurred after sentencing and outside the courtroom. The Court determined that an evidentiary hearing was necessary to resolve the conflicting statements of the parties. (ECF No. 19.)

3

On February 26, 2013, an evidentiary hearing was held. Defendant was represented at the hearing by Attorney Robert Brooks. Defendant's proof consisted of the testimony of Defendant. The United States presented the testimony of Defendant's trial counsel, Michael Robbins.

At the evidentiary hearing, Defendant Waller testified that, after he was sentenced, "they took me back upstairs and [Robbins] came and talked to me through the little attorney visit thing, and he said that he thought that the sentence was fair. And we talked for like maybe ten minutes. And like by me getting sentenced to 10 years, I was a little heated - I ain't going to lie - I told him maybe he should do some of the sentence." (ECF No. 30, Transcript of Proceedings, hereinafter referred to as Tr., at 12.) Waller testified that he "told [Robbins] I wanted to appeal." (Id., Tr. at 13.) Defendant testified that Robbins told him "that he would file it." (Id.) Defendant stated that he was unable to call Robbins while at Mason and he was in transit to Yazoo City, Mississippi, by March 9, 2009. (Id., Tr. at 13, 28.) Waller testified it was a long time before he got a phone call to talk to family or anyone. (Id., Tr. at 28.) Waller stated that he tried to call Robbins "from my counselor's phone, but I didn't get an answer, so I didn't leave a message or anything like that." (Id.) Defendant testified that he told his family to call Robbins, but that he could only testify about his own actions. (Id., Tr. at 29.) After hearing nothing for a month or two and because "Robbins was really good about sending me things in the mail," he assumed Robbins did

4

not file the appeal and started working on his motion to vacate. (Id., Tr. at 13-14, 27-28.) Waller testified that everything about Robbins' advice was pessimistic during the 10-15 minutes of conversation after sentencing, but "I told him clearly I want to appeal it." (Id., Tr. at 14.) Defendant testified that Robbins had talked him out of a lot of things he wanted to do, but "I wasn't going to let him talk me out of my appeal." (Id., Tr. at 15.)

Michael Robbins testified that he was appointed to represent Defendant Waller. (Id., Tr. at 34.) Robbins testified that, "Mr. Waller, as every defendant I have represented has done before him, five minutes after the sentence obviously wants to appeal. I've not found one yet who did not want to appeal." (Id., Tr. at 36.) Robbins testified that:

> We had a discussion immediately after the sentencing hearing, here in the building, in the lockup area. As I said a few moments ago, every defendant wants to appeal at that point, and Mr. Waller was no different. I took some time to speak with him to make a few points. First of all, he had just received a very reasonable sentence, as we say sometimes even though we defend, a good sentence. It was my judgment that he had received and achieved the best result we could hope for. I also pointed out to him that under the plea agreement there was no ground, no – that the appeal was waived because there was no issue about Armed Career Criminal. The court did not find him an Armed Career Criminal. There was no issue about his criminal history and relevant points. And there was no issue concerning . . . calculating of offense levels. That wasn't in any question when we finally got to the point of the actual sentencing hearing. And I said, I don't think it would be prudent for you to pursue an appeal. I did tell him that. And I explained to him that, you will never get a better sentence than this. That was my judgment at the time. It remains my judgment. And then I added, not only will you not get any sentence any better than this, you may well get a higher sentence. And that brought in the 851, the possibility of a trial with no plea

>agreement worked out or a blind plea and the same 851 notice. I mean a lot of things could have happened. We left there with - and I didn't press him to tell me no, you don't want to appeal. I said, I understand the emotion you are going through right now. And I asked him if he would consider what I'm telling him before making a final decision. He said he would. And I understood that he was considering what I had said to him. And then I left him with this thought, I said, if you ultimately decide you want me to file a notice of appeal, call my office and leave a message if I'm not there, either you or a family member. And I told him about the ten days from the 26th of February, whatever that was, and I said, I have to get that notice before that day. And I said, if you request me to file a notice of appeal, I will do so, but I reiterated what I had said earlier about my advice to him, I didn't think it was well advised and there was not grounds on which the sentence would be found unreasonable in the sense of an appeal in my mind.

(Id., Tr. at 42-44.)

Robbins testified that, in February [2009], he was in the process of moving to Oklahoma, and at the time of Defendant's sentencing, remained in his office probably another month or two. (Id., Tr. at 44.) He stated that he had calls forwarded from the office phone to his home number and finally severed phone connections in the middle of May, "something like that." (Id., Tr. at 44-45.) On cross examination, Robbins admitted that he did not memorialize his post-sentencing discussion with Defendant in a notation or letter. (Id., Tr. at 46.) Robbins testified that at the end of the post-sentencing conference, "it was my understanding that he agreed to consider whether he wanted me to pursue the appeal or not in light of the advice and counsel I gave him. And when I did not hear from him thereafter I took it that he was agreeing with the counsel I gave him." (Id., Tr. at 47.) Robbins stated that "the final instructions were no decision had been made

on whether to file an appeal. (Id., Tr. at 48.)  Robbins testified that "[h]e insisted he wanted to appeal, he wanted to appeal. I calmed him and I said, I want you to think about this for a day or two, maybe three. . . . So in my understanding, when I left there, no decision had been made." (Id.)

Robbins admitted on cross examination that, contrary to his earlier testimony, the main dispute at sentencing was the fact that the probation officer was cherry-picking the offense level from one offense and the criminal history from the other offense in calculating the sentence, issues where the right to appeal was retained. (Id., Tr. at 52-53.)  Robbins testified that he, however, looked at the bottom line, Defendant received a sentence under ten years.  (Id., Tr. at 53.)

An attorney who represents a federal criminal defendant and who fails to file a timely notice of appeal after a request by his client is ineffective, in violation of the client's Sixth Amendment rights, without regard to the analysis of prejudice normally conducted under Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). See, e.g., Roe v. Flores-Ortega, 428 U.S. 470, 483, 120 S. Ct. 1029, 1038 (2000)(holding that appeal in which defendant is completely denied counsel in violation of the Sixth Amendment is presumptively unreliable because no presumption of reliability can be accorded to proceedings that "never took place" and prescribing that remedy is delayed appeal); Ludwig v. United States, 162 F.3d 456, 459 (6th Cir. 1998)(holding that "failure to perfect an appeal, in

7

derogation of a defendant's actual request, is a *per se* violation of the Sixth Amendment").

The Court has reviewed the transcripts of Defendant's sentencing hearing. (ECF No. 8-1, ECF No. 8-2.) Attorney Robbins zealously contested the calculation of Defendant's offense level because the probation officer took the highest criminal history category from one count of conviction and the highest offense level from the other count of conviction. (Id.) The Court agreed that counsel's argument had some validity, but ultimately overruled the objection and determined that the probation officer's calculation was correct. (ECF No. 8-2.) Attorney Robbins continued to dispute the applicability of grouping to Defendant's criminal history categories. (ECF No. 8-2 at 19.) At the end of the sentencing proceeding, Attorney Robbins stated that "we might be within those bounds [of the plea agreement's provisions on appeal], and I'm going to have to talk with him about whether he wants to pursue that, but generally waived, but there is a qualifier in the plea agreement, so I don't want to say it's definitely waived." (ECF No. 8-2 at 40-41.)

Defendant Waller was displeased with the sentence the Court imposed. The testimonies and recollections of Defendant and Robbins about their post-sentencing conversation were strikingly similar. While counsel believed that no final decision on an appeal had been made, Waller was adamant that he insisted that counsel file an appeal. Although Robbins was convinced that he had calmed Defendant, he admitted that he did not press Defendant to

say that he did not want to appeal.  (ECF No. 30, Tr. at 43.) Defendant, on the other hand, had no doubt that he wanted to appeal and had expressed his desire to appeal.  (Id. at 14.)  Robbins failed to memorialize his understanding of the meeting and also failed to communicate his understanding of the discussion to Defendant by letter.  Robbins, at that time, was in the process of closing his office and moving to Oklahoma.

The last time Robbins and Defendant spoke, there was no consensus of opinion.  Therefore, the record does not controvert Defendant's contention that he told counsel he wanted to appeal and thought his appeal had been filed when he left in transit for FCI Yazoo City.  In Rodriguez v. United States, 395 U.S. 437, 89 S. Ct. 1715, 23 L. Ed. 2d 340 (1969), the Supreme Court held that the failure of defense counsel to file a notice of appeal despite being instructed to do so by his client constitutes *per se* ineffective assistance of counsel, without regard to whether there exists a potentially meritorious issue that could have been raised on direct appeal.[2]

For all the foregoing reasons, the motion to dismiss filed by the United States is DENIED.  Defendant Waller's motion pursuant to 28 U.S.C. § 2255 is GRANTED, and the sentence imposed on February

---

[2] See also Roe v. Flores-Ortega, 528 U.S. at 477, 120 S. Ct. 1035 ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable. . . .  This is so because a defendant who instructs counsel to initiate an appeal reasonably relies upon counsel to file the necessary notice. Counsel's failure to do so cannot be considered a strategic decision; fling a notice of appeal is a purely ministerial task, and the failure to file reflects inattention to the defendant's wishes.") (citations omitted).

26, 2010, is VACATED. It is further ORDERED, that a new criminal judgment be entered in case number 07-20393-STA, sentencing defendant Waller to the same sentence as the earlier one and specifying that he is to be given credit for the time already served.

Pursuant to Fed. R. Crim. P. 32(j)(1)(B), Defendant is informed that he has a right to appeal the re-entered criminal judgment. Defendant has been declared indigent, qualifies for appointment of counsel under 18 U.S.C. §3006A, and is currently represented by appointed attorney Robert Brooks in this civil proceeding. The Court ORDERS that Attorney Brooks representation continue through the filing of the appeal from the re-entered criminal judgment if Defendant Waller desires an appeal.[3]

Pursuant to Fed. R. App. P. 4(b), Defendant will have fourteen (14) days from the re-entry of the criminal judgment to file a notice of appeal.

IT IS SO ORDERED this 21st day of March, 2013.

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

---

[3] Attorney Brooks must then comply with the procedures for withdrawal set forth in Fed. R. App. P. and Sixth Circuit Rule 12 if he desires to terminate his representation of Defendant Waller. By filing a notice of appeal, counsel initiates a process that can only be terminated in compliance with the applicable rules.